# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

BERTHA SIRACO,                )
                              )
            PLAINTIFF         )
                              )
v.                            )      No. 2:09-cv-384-DBH
                              )
MICHAEL J. ASTRUE,            )
COMMISSIONER OF SOCIAL SECURITY, )
                              )
            DEFENDANT         )

# DECISION AND ORDER DECLINING TO ADOPT THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

This dispute over the amount of fees a law firm can recover from its client in a Social Security Disability appeal purports to be over whether any rate enhancement is permissible for paralegal billings. I conclude that the dispute's focus is misdirected. Here the law firm and the claimant had a percentage contingent fee agreement between them, a type of fee arrangement expressly permitted by the Supreme Court. This reviewing court is still required to assess the resulting fee amount to see if circumstances make it unreasonable.[1] (It is the Commissioner who is challenging the fee amount, not the client.) But the answer to whether the resulting fee amount is

---

[1] "Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . . " 42 U.S.C. § 406(b)(1)(A).

unreasonable does not come down to the propriety of a multiplier for paralegal services.

**BACKGROUND**

In this case, the Commissioner denied disability benefits to the claimant. Wanting to challenge the denial, she engaged a law firm. She signed a contingent fee agreement providing for attorney fees in the amount of 25% of her recovery, the maximum amount permitted by statute, and no fee at all if she did not recover monetary benefits. Contingent Fee Agreement (Docket Item 20-2); 42 U.S.C. § 406(b)(1)(A). In representing her from 2007 until May 28, 2010, the law firm accrued 25.45 hours of paralegal work and 4.7 hours of lawyer work in the quest for past due benefits. Att'y Billing Record (Docket Item 20-3). The firm's work was successful and it obtained for her a total award of $45,466.50.[2] She will continue to receive benefits into the future, but

---

[2] Plaintiff Bertha Siraco filed for disability and Disability Insurance benefits in June 2007. Ms. Siraco claimed she became disabled on June 30, 2002 due to hearing loss, vertigo/dizziness, degenerative disc and joint disease and obesity. Ms. Siraco's claim was denied by a federal reviewing official, an Administrative Law Judge ("ALJ") and the Decision Review Board ("Board"). The ALJ found that the plaintiff's degenerative disc disease and hearing loss were medically determinable impairments, but concluded that they were nonsevere. Accordingly, the ALJ ended the disability determination at step 2 of the sequential evaluation process. In reviewing the ALJ's decision, the Board disagreed, finding that the plaintiff's degenerative disc disease and degenerative joint disease, obesity, and right ankle impairment were severe impairments. However, the Board further found that the plaintiff's hearing loss and varicose veins were nonsevere. Notably, the Board based the non-severity finding with respect to the plaintiff's bilateral hearing impairment on the vocational expert's hearing testimony that Ms. Siraco's hearing loss "would not impact most jobs" within the occupational base defined by the ALJ's residual finctional capacity hypothetical. The Board also found that, as of June 30, 2002, the plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. Rather, the Board determined that the plaintiff retained the residual functional capacity to perform a limited range of light work. Although the Board found that the plaintiff could not perform her past relevant work, it determined at Step 5 that she could perform other work that existed in significant numbers in the national economy.

Ms. Siraco sought review from this court of the Board's final administrative decision. After the plaintiff filed her itemized statement of errors, the Commissioner moved to reverse the decision of the Board and to remand the case to the ALJ. Itemized Statement of Errors (Docket Item 9); Def.'s. Amended Unopposed Mot. for Entry of J. under Sentence Four of 42 U.S.C.
*(continued next page)*

2

those future amounts are not counted in the contingency fee calculation. Twenty-five percent of her award of past due benefits is $11,366.62. Pl.'s Mot. for Attorney Fees n.1 (Docket Item 20). Since the law firm has already recovered $6,000 in fees for its work on her behalf before the Social Security Administration, the current motion in this court under section 406(b) seeks the remaining $5,366.62 of the percentage contingency for the work done here.[3] Id. at 1.

The Commissioner has opposed the motion, with the following explanation:

> When the $5,366.62 in requested § 406(b) fees is divided by the 30.15 total hours expended by Plaintiff's Counsel's office, an amount of $177.99/hour results. At first blush, this appears reasonable as it almost mirrors the hourly rate he received for attorney work under EAJA.
>
> Despite the apparent reasonableness of Plaintiff's Counsel's request, the Commissioner has significant concerns. Specifically, of the 30.15 hours performed before this Court, only 4.7 hours were performed by an attorney. Thus, Plaintiff's Counsel is actually seeking 406(b) fees for actual attorney work at a rate of $1141.83/hour ($5,366.62 divided by 4.7 hours). This is unreasonable.
>
> The Commissioner, however, is not ignorant to the fact that Plaintiff's Counsel's staff expended 25.45 hours of paralegal work in this case. Unfortunately, the Commissioner is unable to find any precedential guidance from this Court—or the First Circuit—regarding how paralegal work should be compensated under § 406(b), if at all. Further convoluting this query is the fact that the courts that have addressed this issue are in disagreement regarding whether or not time expended by a paralegal is

---

§ 405(g). I granted that request, directing the ALJ to conduct the analysis past steps 2 and 3 of the sequential evaluation, to reassess Ms. Siraco's residual functional capacity as of June 30, 2002. Order (Docket Item 13). Thereafter, the ALJ awarded Ms. Siraco past due benefits.

[3] The Magistrate Judge previously awarded the plaintiff $2,735.80 against the Commissioner for attorney fees under the Equal Access to Justice Act, and that was paid to the law firm. The law firm will have to pay that amount to its client if it recovers more than that on this motion. Gisbrecht v. Barnhart, 535 U.S. 789, 796 (2002). Thus, she will actually pay less than 25%.

> separately considered or whether it is expected to be included in overhead. At bottom, the Commissioner is unable to agree that the award Plaintiff's counsel seeks is reasonable as he is unsure whether or not this Court is of the belief that paralegal time is compensable under § 406(b)—and if it is, at what rate.

Def.'s Response to Pl.'s Counsel's Mot. for an Award of § 406(b) Fees at 4-5 (citations omitted) (Docket Item 21). In the end, the Commissioner recommended paying the law firm for attorney hours based upon 3 times the hourly rate permitted under the EAJA (4.7 hours times 3 times $175.75) for a total of $2,478.00 and the paralegal time for 25.45 hours at the rate of $75 per hour (also the hourly rate permitted under the EAJA I learned at oral argument) for a total of $1909, yielding a grand total fee award of $4,387.00 rather than the percentage contingency fee of $5,366.62.

## ANALYSIS

In Gisbrecht v. Barnhart, 535 U.S. 789 (2002), the Supreme Court was explicit that contingent fees up to a maximum of 25% are permitted, not disfavored, in social security cases. Gisbrecht recognized contingent fees "as the *primary* means by which fees are set for successfully representing Social Security benefits claimants in court." Id. at 807 (emphasis added). Within the 25% limit, however, the lawyer "must show that the fee sought is reasonable for the services rendered." Id. Gisbrecht approved "looking first to the contingent-fee agreement, then testing it for reasonableness." Id. at 808. The Court mentioned the appropriateness of fee reductions "based on the character of the representation and the results the representative achieved," and based

4

on attorney-caused delay that drove up the size of the award for accumulating benefits. Id. It also observed:

> If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order. In this regard, the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases."[4]

Id. As Justice Scalia predicted in his Gisbrecht dissent[5], courts have struggled over how to apply Gisbrecht's Janus-faced approach. Many courts have found it difficult to leave behind the lodestar analysis that they are accustomed to use

---

[4] The Magistrate Judge has criticized this law firm for referring to an hourly rate that tribunals have "approved" because the affidavits do not establish what hourly rate the law firm actually bills to clients. See Andrews v. Astrue, Civil No. 08-135-JAW, 2011 WL 124302 (D. Me. January 13, 2011); O'Brien v. Astrue, Civil No. 07-34-DBH, (Docket Item 21 at 5) (D. Me. February 15, 2010); Quimby v. Astrue, Civil No. 04-33-JAW, 2010 WL 817464 *5 (D. Me. March 4, 2010). As a result, the Magistrate Judge has used the EAJA approved rate (now $175.75), clearly not a "normal hourly billing charge for noncontingent-fee cases" in Gisbrecht's terms, and probably well under any reasonable market rate. At oral argument, I learned that this law firm has no normal hourly billing charge for noncontingent fee cases because it does only benefits work and uses only contingent fee agreements, or recovers fees under the EAJA. At oral argument, counsel told me that the last hourly rate billed to a private client was fifteen years ago. Nevertheless, the firm should be able to furnish some persuasive information to try to meet the Gisbrecht standard—for example, the hourly rate that area lawyers of comparable experience bill for work that is at least somewhat analogous.

[5] Scalia, J., dissenting:
> I do not know what the judges of our district courts and courts of appeals are to make of today's opinion. I have no idea what the trial judge is to do if he finds the fee produced by the ("presumptively reasonable") contingent-fee agreement to be 25% above the lodestar amount; or 40%; or 65%. . . . While today's opinion gets this case out of our "in" box, it does nothing whatever to subject these fees to anything approximating a uniform rule of law. That is, I think the inevitable consequence of trying to combine the incompatible. The Court tells the judge to commence his analysis with the contingent-fee agreement, but then to adjust the figure that agreement produces on the basis of factors (most notably, the actual time spent multiplied by a reasonably hourly rate) that are, in a sense, the precise antithesis of the contingent-fee agreement, since it was the very purpose of that agreement to eliminate them from the fee calculation.

under fee-shifting statutes. (Under the lodestar, courts determine reasonable rates and the reasonable amount of time for a case, then consider adjustments based upon a number of other factors. Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir. 1997).) Thus, some courts have developed rules of thumb in social security disability cases to determine when a contingent fee becomes unreasonable. Typically the rules of thumb measure the contingent fee against the basic lodestar starting point of hours times rates, identifying a multiplier (*e.g.*, 2 or 3 times) below which the fee will not be deemed unreasonable.

But two circuit courts of appeal recently have found it necessary to remind trial courts that after Gisbrecht they must not focus their primary attention on the lodestar analysis in reviewing fees. In Crawford v. Astrue, 586 F.3d 1142, 1148 (9th Cir. 2009) (quoting Gisbrecht, 535 U.S. at 793), for example, the Ninth Circuit reiterated Gisbrecht's instruction that a district court "must respect 'the primacy of lawful attorney-client fee agreements.'" Crawford stated: "Performance of that duty must begin, under Gisbrecht, with the fee agreement, and the question is whether the amount need be *reduced*, not whether the lodestar amount should be *enhanced*." Id. at 1149 (emphasis added).

> By beginning with the lodestar calculation, the district courts plainly failed to respect the "primacy of lawful attorney-client fee agreements." Lawful attorney-client contingent fee agreements do not result in "enhancements' that modify a lodestar fee that might otherwise be too low. Rather, they are the "primary means" by which fees are determined. The district courts' methodology in these cases under-emphasizes the contingent-fee agreements,

6

contravening the Supreme Court's instruction that the agreements be the primary means for determining the fee.

Id. at 1150 (citation omitted). In Jeter v. Astrue, 622 F.3d 371 (5th Cir. 2010), the Fifth Circuit was somewhat more tolerant of district courts looking at the lodestar calculation, but only under clear restrictions:

> We find . . . that it is possible to construe Gisbrecht such that its prohibition against lone reliance on the lodestar method still permits a court to include a lodestar calculation in its consideration of the fee—specifically, in instances where the court simultaneously relies on *additional* factors to support its determination that the contingency fee constitutes an unearned advantage to the attorney—such that the fee award may be considered a windfall.

Jeter, 622 F.3d at 377 (emphasis added). According to Jeter, the focus must be on whether there is

> some unearned advantage for which it would not be reasonable to compensate him.
>
> Any other reading would give attorneys a perverse incentive to delay proceedings or expend unnecessary hours in an effort to prolong successful litigation—all to ensure that their § 406(b) fee would not be reduced based on its appearing excessively high in comparison to the number of hours they expended. Likewise, we do not read Gisbrecht's "windfall" as support for the proposition that experienced, competent counsel should be punished for accomplishing an arduous task in a shorter span of time than less-experienced, less-aggressive counsel. Accordingly, we interpret Gisbrecht's prohibition on the lodestar method as an affirmation that if a claimant's success on appeal can be attributed to his attorney's endeavors before the district court, then that attorney should reap the benefit of his work—even if he managed to accomplish a great deal in a small window of time. In this way, Gisbrecht's "windfall" does not preclude attorneys from recovering what may mathematically seem like a high fee award if the attorney's success on appeal is of his own making.

Id. at 380-81. Furthermore, Jeter says:

> [W]e read Gisbrecht as commanding that in order for district courts to rely on the lodestar method to find a particular fee constitutes a windfall, the district court must also articulate the factors that demonstrate to the court that the fee is *unearned*. Specifically, the district court must discuss the factors that demonstrate that the success on appeal is *not of the attorney's making, but rather, is attributable to some other source for which it would be unreasonable to compensate the attorney*.

Id. at 381 (emphasis added).

Following Gisbrecht, Crawford and Jeter, I conclude that the influence of the lodestar calculations here have distorted the proper analysis. I do not accept the Commissioner's argument that this court should approve an award measured by the attorney's hours times the EAJA rate with a multiplier of 3, and the paralegal's hours according to the EAJA rate.

Instead, I start with the contingent fee: $5,366.62 for the work done in this federal court, hardly an overwhelming sum for federal court practice and certainly not for the amount recovered for this client. It is undisputed that the claimant's lawyers were very successful on her behalf in reversing the Commissioner's denial of benefits, and there is no accusation of delay or inadequate representation. The only issue is whether the fee is too large given the paralegal's significant role. Under the Crawford and Jeter analysis, which I believe is faithful to Gisbrecht, the answer is no. How the law firm chooses to accomplish the task is not the issue. There is no suggestion that this was obviously an inordinately easy case from the outset and that the success was not due to the law firm's efforts, or that its success was attributable to some other source.

That should be the end of the matter. Nevertheless, I will deal with the Commissioner's arguments and concerns. The Commissioner says the fee is too large because too much is being awarded for the paralegal's work. At oral argument, the Commissioner's lawyer was troubled that at even an hourly rate of $75 (he may have said $70), "the paralegal would be paid at $150,000 plus per year," whereas the average paralegal salary across the country is $50,000. First, that argument gives improper primacy to the lodestar calculation rather than the fee agreement. Second, $150,000 is not necessarily an unreasonable amount to bill for a salary of $50,000, because the law firm must take in far more dollars than the paralegal's salary to make it profitable to employ him or her. The law firm must also pay fringe benefits, unemployment and worker's compensation insurance, rent, heat, light, malpractice premiums, other insurance and other elements of overhead before it can make a profit on employing the paralegal. Third, and critical to the manner in which contingent fees work, on cases where there is no monetary recovery the law firm receives nothing, even though it still must pay salary and benefits to those who worked on the case as well as rent for their space, malpractice insurance premiums and general overhead. The paralegal may not be at risk for his or her salary (if the law firm can survive), but the law firm takes on the risk of that salary and all the other related elements of overhead in every contingent fee case. Therefore, the law firm must receive more than its ordinary billing rates for

cases that it wins, to offset the time and expenditures on those where it loses and receives no reimbursement.[6]

For the limited manner in which the lodestar calculation should be used in assessing a contingent fee award, the Commissioner should have continued with the analysis with which he began: What was the total effort expended by this law firm? Law firm practices need not follow a single model. Some lawyers do all their own research; some outsource; some use paralegals; some use law clerks, legal assistants, or interns; probably there are other variations.[7] It is not the purpose of a fee award to encourage or discourage one or another of these. Law firms should be free to use the most economically efficient model as long as they comply with ethical standards and provide excellent legal representation to their clients. Thus, if this law firm is able to educate its

---

[6] According to Restatement (Third) of the Law Governing Lawyers § 35 comment c (2000):
> A contingent fee may permissibly be greater than what an hourly fee lawyer of similar qualifications would receive for the same representation. A contingent-fee lawyer bears the risk of receiving no pay if the client loses and is entitled to compensation for bearing that risk. Nor is a contingent fee necessarily unreasonable because the lawyer devoted relatively little time to a representation, for the customary terms of such arrangements commit the lawyer to provide necessary effort without extra pay if a relatively large expenditure of the lawyer's time were entailed. However, large fees unearned by either effort or a significant period of risk are unreasonable.
>
> A tribunal will find a contingent fee unreasonable due to a defect in the calculation of risk in two kinds of cases in particular: those in which there was a high likelihood of substantial recovery by trial or settlement, so that the lawyer bore little risk of nonpayment; and those in which the client's recovery was likely to be so large that the lawyer's fee would clearly exceed the sum appropriate to pay for services performed and risks assumed. A lawyer's failure to disclose to the client the general likelihood of recovery, the approximate probable size of any recovery, or the availability of alternative fee systems can also bear upon whether the fee is reasonable.

[7] The lawyers told me at oral argument that in Maine no other social security disability practitioners use paralegals as much as this firm, and that the proportion of paralegal time in this case is unusual even for this firm.

paralegals to do some of the work that other firms assign to lawyers, that ability should not compel it to reduce its contingent fee. At oral argument, the claimant's lawyer told me that the paralegal did much of the factual preparation of the case. With no indication that a total of 30 hours was excessive legal work to achieve the result here, producing an effective modest hourly rate of $177.79 for the total services, that should have been the end of the matter.[8]

It is true that Gisbrecht talks about the amount of time "counsel" spent on the case. But there is no suggestion that in using this language the Court was focusing on the *lawyer's* time alone in assessing the reasonableness of a contingent fee and trying to bind Social Security practice to a particular model of law firm structure. As I have stated, if a firm can organize its practice efficiently by using less of its lawyers' time, yet still produce high quality legal work, it should not be penalized in the fee it can recover. A different conclusion would lead this and other lawyers to do more of the work themselves and delegate less to paralegals, to no apparent gain. I conclude that the reasonableness review contemplated by Gisbrecht has to do with the *entire* fee, compared to the services rendered, and is not limited to the hours put in by someone admitted to the bar.

---

[8] At oral argument when I pressed the Commissioner's lawyer, he suggested that if the claimant's lawyer had done all the work without using a paralegal, the total hours (30) would have been lower because of the lawyer's experience. The claimant's lawyer said that 2 paralegal hours to 1 lawyer's hour is the firm's rule of thumb. On that basis, the lawyer would have spent an additional 12.5 hours (in place of the paralegal's 25 hours) for a total of 17.2 hours. Under the Commissioner's approach (hours X the EAJA rate ($175.75) X 3), the fee award would be $9,068.70, higher than the amount the law firm has requested.

11

Thus, the issue here is not whether paralegal time is compensable or, if so, what multiplier, if any, is appropriate. The issue is whether this percentage contingent fee agreement yields a reasonable fee amount in this case. The answer to that question depends upon the legal services provided, regardless of how the law firm structured its work on the case, and whether that amount needs to be *reduced* (Crawford) or whether there is some *additional reason beyond the lodestar calculation* (Jeter) to find that some part of the fee was unearned and not due to the law firm's efforts. I conclude that the amount requested here does not create such a windfall.[9]

Now I recognize that something else is going on in this dispute. There are thousands of these cases, and the Commissioner is looking for rules of thumb as to which fee requests to challenge and which not. Fair rules of thumb can save the time and resources of the court as well. Apparently in past cases this District's Magistrate Judges have indicated that there is no point in the Commissioner challenging fee requests where the lawyer gets a recovery of no more than 2 or 3 times the hourly rate he/she is able to recover in an EAJA fee award.[10] The Commissioner would like similar guidance on how to evaluate fee requests when paralegal time is a major component. I am not in this case approving or disapproving a rule of thumb that reduces the number of attorney

---

[9] I note also that payment is delayed in contingency fee cases. Here, although time started accruing in 2007, the law firm still is awaiting final payment, not generally the case with hourly billing arrangements.

[10] See, e.g., Quimby v. Astrue, 04-33-JAW, 2010 WL 817464, *5 (D. Me. March 4, 2010); Quint v. Astrue, 05-135-JAW, 2008 WL 4905482, *3 (D. Me. Nov. 12, 2008); Ogle v. Barnhart, No. 99-314-DBH, 2003 WL 22956419, at *6 (D. Me. Dec. 12, 2003). In note 4 supra, I express my discomfort with using the EAJA fee as the putative hourly rate, but I also observe that the law firm could do a better job of providing an alternative to the Magistrate Judge.

fee contests in this District. But if there is to be a rule of thumb, it must apply to the legal services provided, not fixate on who is providing them. And most important, the rule of thumb cannot be taken to announce that anything beyond its limit is unreasonable. It can only set aside a group of fee amounts that will be deemed reasonable without further attention. Any other case, just like this one, must still be evaluated according to the rule of Gisbrecht, Crawford and Jeter for the reasonableness of the fee amount given all the services rendered by the law firm as a whole, and why some portion of the fee requested should be considered as "unearned" and attributed to some source other than the law firm's efforts.[11]

I know that attorney fee disputes present difficult issues and the temptation to find easy formulas to resolve them is almost irresistible. But Gisbrecht has told us that the percentage contingency fee is the default. The burden is on the person attacking the resulting fee amount to show that part of

---

[11] See, e.g., McGuire v. Sullivian, 873 F.2d 974, 981 (7th Cir. 1989) (court upheld an award of $15,533.12 for 42.74 hours of legal service before the court which amounted to somewhat less than twenty-five percent of past-due benefits and represented over $316 per hour in1989); Yarnevic v. Apfel, 359 F.Supp.2d 1363, 1363-67 (N.D.Ga. 2005) (approving a contingency fee agreement resulting in an award of $21,057.75 for approximately 33 hours of work conducted primarily by the attorney's paralegals, representing $638 per hour); Claypool v. Barnhart, 294 F. Supp. 2d 829 (S.D.W.Va. 2003) (approving an award under a contingency fee agreement of $18,000, or approximately 9 percent of the past-due benefits awarded, for 12.56 hours of work, representing $1,433 per hour); Hearn v. Barnhart, 262 F. Supp. 2d 1033, 1037 (N.D.Cal. 2003) (approving $25,132.50 for 56 hours, representing $448 per hour); Martin v. Barnhart, 225 F. Supp. 2d 704 (W.D.Va. 2002) (awarding $10,189.50 for 16.82 hours of court-related work, representing over $605 per hour); Dodson v. Barnhart, Civil No 00-0022, 2002 WL 31927589 (granting fee award of $5,000 representing $694.44 per hour); Hussar-Nelson v. Barnhart, No. 99 C 0987, 2002 WL 31664488 (N.D.Ill. 2002) (awarding fee of $19,425.25, representing 25% of past due benefits, representing approximately $393 per hour); Roark v. Barnhart, 221 F. Supp. 2d 1020, 1026 (W.D.Mo. 2002) (awarding $2,729.78 of contingent fees to plaintiff's counsel for 13.25 hours of work, representing $206.02 per hour); Coppett v. Barnhart, 242 F. Supp. 2d 1380 (S.D.Ga. 2002) (granting $6,554.12 in attorney fees for 18.7 hours of work, representing $350.49 per hour).

it is unearned.  A lodestar calculation with enhancement is not sufficient to that task.

Accordingly, I **DECLINE** to adopt the Report and Recommended Decision of the Magistrate Judge in this case.  The motion for attorney fees is **GRANTED** in the amount of Five Thousand Three Hundred Sixty-Six Dollars and Sixty-Two Cents ($5,366.62).

**SO ORDERED.**

**DATED THIS 20TH DAY OF JULY, 2011**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**